LOURIE, Circuit Judge,
dissenting.
I join Parts I-IV of Judge Dyk’s concurrence-in-part, dissent-in-part, but I respectfully dissent with respect to the result reached by the majority holding the disparagement provision of § 2(a) unconstitutional as violating the First Amendment. For the following additional reasons, I would affirm the USPTO’s decision refusing to register Mr. Tam’s trademark.
First, one wonders why a statute that dates back nearly seventy years — one that has been continuously applied — is suddenly unconstitutional as violating the First Amendment. Is there no such thing as settled law, normally referred to as stare decisis ? Since the inception of the federal trademark registration program in 1905, the federal government has declined to issue registrations of disparaging marks. The Trademark Act of 1905 provided specific authority to refuse to register immoral or scandalous marks, see Act of Feb. 20, 1905, ch. 592, 33 Stat. 724; the USPTO refused to register disparaging marks on those grounds before the Lanham Act of 1946 was enacted, which explicitly incorporated a disparagement proscription, see Appellee’s En Banc Br. 6. The USPTO’s authority to refuse to issue trademark registrations with certain offensive content has thus existed in U.S. law for over one hundred years. As the majority notes, these are not prohibitions that have lain unused and latent for all of those years. The USPTO has been rejecting applications for trademark registrations on this basis throughout this period of time. By finding § 2(a) unconstitutional, we interfere with the long-standing Congressional policy of delegating authority to the USP-TO to filter out certain undesirable marks from the federal trademark registration system. We should not further the degradation of civil discourse by overturning our precedent that holds that the First Amendment is not implicated by § 2(a)’s prohibition against disparaging trademarks.
In addition, the refusal of the USPTO to register a trademark is not a denial of an applicant’s right of free speech. The markholder may still generally use the mark as it wishes; without federal registration, it simply lacks access to certain federal statutory enforcement mechanisms for excluding others from confusingly simi *1375 lar uses of the mark. Mr. Tam may use his trademark as he likes, whether it be encouraging discussion on or taking ownership of racial slurs, or identifying goods and services with his band. In fact, it seems quite likely that Mr. Tam will continue to use his band name to make a statement regardless of federal registration — the expressive purpose of his mark undoubtedly overshadows the commercial considerations. The argument, therefore, that a trademark applicant’s right of free speech has been impaired by the failure of the USPTO to grant a federal registration is unconvincing.
Furthermore, it is not entirely clear that a trademark, speech. The lack of a federal registration does not alter the informational function of a trademark: disparaging marks may still be used to identify the source of goods or services. The government’s decision to support certain choices and not others will invariably have some discouraging effect, but the government does not necessarily violate an individual’s constitutional rights merely by refusing to grant registration and thereby provide additional assistance in the enforcement of trademark rights.
Moreover, trademark rights, as amicus International Trademark Association informs us, are not limited to those marks deemed registrable by the USPTO. “Section 43(a) of the Lanham Act is available to protect all designations of origin, even— indeed, especially — those that cannot be registered under Section 2(a).” Br. of amicus curiae Int’l. Trademark Ass’n 4. The fear that mark-holders would be left with absolutely no recourse for trademark protection, once an application for federal registration is denied, appears unfounded. Rather, all that is at issue here is the government’s decision not to facilitate enforcement with the additional mechanisms attendant to federal registration. The denial of federal trademark registration thus does not deprive the mark-holder of trademark protection because of the content of its mark; the markholder still has trademark rights under the Act in addition to its common law rights.
Finally, it has been questioned whether federal registration imparts the “imprimatur” of the federal government on a mark, such that registration could be permissibly restricted as government speech. I believe that such action is justified. The USPTO does in fact “publish” trademarks, in the Trademark Official Gazette. Despite being in electronic form, it is still a form of government speech that is partially controlled or affected by government action. The USPTO may also require that a disclaimer of unregistrable components be included for publication. Moreover, a federally registered mark is usually “stamped” with some indication of government oversight, viz., the use of the ® symbol or a phrase that the mark is registered in the USPTO, giving proof to the public that the government has in some sense approved the mark. Without that designation, the markholder cannot take advantage of some of the benefits of federal registration, e.g., constructive notice for damages.
Similarly to specialty license plate designs, federally registered trademarks can be identified with two message contexts: one from the provider of goods or services, who has chosen to use a certain mark to link its product or services to itself, and one from the government, which has deemed the mark qualified for the federal registration program. The evaluation of disparagement is not based on the government’s moral judgment, despite any distaste expressed in its briefing for cancelled or applied-for marks; a mark is disqualified based only on evidence of its perception by the affected persons. The government action does not include a judgment *1376 on the worthiness or the effectiveness of the mark; if it did, it mighU-but not necessarily — venture into viewpoint-discrimination territory. And while a trademark alone, as a word placed on private property, is not government speech, once it claims that federally registered status, it becomes more than the private owner’s speech. It is not simply private speech as is the holding of a placard in a parade.
In my view, holding the disparagement provision of § 2(a) Unconstitutional would be unsound, and the USPTO’s refusal to register Mr. Tam’s disparaging mark should therefore be affirmed.
Accordingly, I respectfully dissent.